UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| MARNIE M., <br><br> Plaintiff, <br><br> v. <br><br> MARTIN J. O'MALLEY, <br> COMMISSIONER OF SOCIAL SECURITY, <br><br> Defendant. | No. 20 CV 7511 <br><br> Magistrate Judge McShain |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Marnie M. appeals the Commissioner of Social Security's decision denying her application for benefits. For the following reasons, plaintiff's motion to reverse or remand [14] is denied, defendant's motion for summary judgment [19] is granted, and the decision denying the application for benefits is affirmed.[1]

**Background**

**A.     Procedural Background**

In April 2019, plaintiff filed a Title II application for a period of disability and disability insurance benefits, alleging an onset date of April 12, 2019. [13-1] 15. The claim was denied initially and upon reconsideration. [*Id.*]. Plaintiff requested a hearing, which was held by an administrative law judge (ALJ) in September 2020. [*Id.*] 89-140. In a decision dated September 29, 2020, the ALJ denied plaintiff's claim. [*Id.*] 15-35. The Appeals Council denied review in December 2020 [*id.*] 1-6, making the ALJ's decision the agency's final decision. *See* 20 C.F.R. §§ 404.955 & 404.981. Plaintiff then appealed to this Court [1], and the Court has subject-matter jurisdiction over the appeal pursuant to 42 U.S.C. § 405(g).[2]

---

[1] Bracketed numbers refer to entries on the district court docket. Referenced page numbers are taken from the CM/ECF header placed at the top of filings, except for citations to the administrative record [13], which refer to the page numbers in the bottom right corner of each page.
[2] The parties have consented to the exercise of jurisdiction in this case by a United States Magistrate Judge. [6, 7].

**B. ALJ's Decision**

The ALJ reviewed plaintiff's disability claim in accordance with the Social Security Administration's five-step sequential-evaluation process. At step one of her decision, the ALJ found that plaintiff had not engaged in substantial gainful activity since her alleged onset date. [13-1] 17. At step two, the ALJ determined that plaintiff suffered from five severe impairments: degenerative disc disease of the lumbar and cervical spine, osteoarthritis of the feet with sinus tarsi syndrome, meniscal tear of the right knee, bipolar disorder, and attention deficit hyperactivity disorder (ADHD). [*Id.*] 17-19. At step three, the ALJ ruled that plaintiff's impairments did not meet or equal the severity of a listed impairment. [*Id.*] 19-20. Before turning to step four, the ALJ determined that plaintiff had the residual functional capacity (RFC) to perform light work with the following restrictions:

> [T]he claimant: can frequently operate foot controls bilaterally; can occasionally climb ramps, stairs, ladders, ropes, or scaffolds; can occasionally stoop, kneel, crouch, or crawl; can occasionally work at unprotected heights, and exposed to vibration, but can frequently work around moving mechanical parts, or operate a motor vehicle; can perform more than simple, but less than complex tasks, that can be learned and mastered in up to six months; and is occasionally able to interact with supervisors, co-workers, and the public.

[*Id.*] 20-27.

At step four, the ALJ found that plaintiff could not perform her past relevant work. [*Id.*] 27-28. At step five, the ALJ determined that jobs existed in significant numbers in the national economy that plaintiff could perform, such as bench assembler (170,000 jobs), plastic mold tender (135,000 jobs), and hand packager (125,000 jobs). [*Id.*] 28-33. The ALJ accordingly ruled that plaintiff was not disabled and denied her application for benefits.

**Legal Standard**

Under the Social Security Act, disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

To determine whether a claimant is disabled, the ALJ conducts a sequential five-step inquiry: (1) whether the claimant is unemployed; (2) whether the claimant has a severe impairment or combination of impairments; (3) whether the claimant's impairment meets or equals any listed impairments; (4) whether the claimant is

unable to perform her past relevant work; and (5) whether the claimant is unable to perform any other available work in light of her age, education, and work experience. *See* 20 C.F.R. §§ 404.1520(a)(4) & 416.920(a). "An affirmative answer leads either to the next step, or, on Steps 3 and 5, to a finding that the claimant is disabled. A negative answer at any point, other than Step 3, ends the inquiry and leads to a determination that a claimant is not disabled." *Clifford v. Apfel*, 227 F.3d 863, 868 (7th Cir. 2000).

The Court reviews the ALJ's decision deferentially to determine if it is supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is "not a high threshold: it means only 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Karr v. Saul*, 989 F.3d 508, 511 (7th Cir. 2021) (quoting *Biestek v. Berryhill*, 139 S. Ct. 1148, 1152 (2019)). "When reviewing a disability decision for substantial evidence, we will not reweigh the evidence, resolve debatable evidentiary conflicts, determine credibility, or substitute our judgment for the ALJ's determination so long as substantial evidence supports it." *Warnell v. O'Malley*, 97 F.4th 1050, 1052-53 (7th Cir. 2024) (internal quotation marks and brackets omitted).

## Discussion

Plaintiff argues that the ALJ's decision should be reversed for three reasons. First, plaintiff argues that the ALJ should have requested an updated medical expert review of the podiatric evidence because it was submitted after the last state agency review and could have changed the result. [14] 10-12. Second, plaintiff contends that the ALJ inadequately assessed plaintiff's ability to stand and/or walk and did not adequately consider the evidence that supported allowance of the claim. [*Id.*] 12-14. Third, plaintiff argues that the ALJ failed to discuss Dr. Katz's medical opinion from June 9, 2018. [*Id.*] 15.

### I. Evidence of Plaintiff's Podiatric Impairment Did Not Require an Updated Expert Review

Plaintiff contends that the ALJ should have requested an updated medical review of the podiatric evidence submitted after the last state agency review because it could have "changed the picture so much" that an expert had to weigh in. [14] 12.

According to "the applicable regulations and Seventh Circuit case law," it is within the ALJ's discretion "to consult a medical expert when the evidence received is inadequate for the ALJ to determine whether the claimant is disabled." *Frank R. v. Kijakazi*, No. 19 CV 3223, 2021 WL 4264386, at *10 (N.D. Ill. Sept. 20, 2021) (citation and internal quotations omitted); *see also Martin v. Kijakazi*, 88 F.4th 726, 729 (7th Cir. 2023); *Poyck v. Astrue*, 414 F. App'x 859, 861 (7th Cir. 2011); *Similia v. Astrue*, 573 F.3d 503, 516 (7th Cir. 2009); *Skinner v. Astrue*, 478 F.3d 836, 843 (7th

3

Cir. 2007). Further, "the reviewing court defers to the ALJ on the question of how much evidence must be gathered" because "the practical reality is that no record is complete – one may always obtain another medical examination, seek the views of one more consultant, wait six months to see whether the claimant's condition changes, and so on." *Bertaud v. O'Malley*, 88 F.4th 1242, 1245 (7th Cir. 2023) (citations and internal quotations omitted). In this case, the Court rejects plaintiff's argument and finds that the ALJ's decision to not call for an updated medical review of the podiatric evidence from May 2020 was a permissible exercise of her discretion.

First, the ALJ declined plaintiff's request for two distinct reasons: (1) plaintiff's podiatric "impairment d[id] not meet the durational period . . . as she just started treatment for this in March 2020," [13-1] 15, and (2) plaintiff "[wa]s undergoing conservative treatment at th[at] time." [*Id.*]. The Court agrees there is at least an apparent tension between the ALJ's finding that plaintiff's foot impairment was severe, which necessarily means that it lasted or was expected to last at least twelve months, and her assertion that an updated medical review was not required because the durational component was not met. However, the Court does not need to resolve this issue because she had another independent reason – the conservative treatment – to deny the request.

Second, plaintiff has not established that the podiatric evidence "changed the picture so much" that the ALJ erred when she evaluated the significance of Dr. Pietz's report on her own. *See Stage v. Colvin*, 812 F.3d 1121, 1125 (7th Cir. 2016) (ALJ erred when he failed to consult a physician after "Dr. Oni's evaluation contained significant, new, and potentially decisive findings—the need for a hip replacement and evidence of further spinal degeneration," which "could reasonably change the reviewing physician's opinion"). On May 12, 2020, plaintiff had a podiatrist visit for severe foot pain. [13-1] 614-16. During this visit, plaintiff reported that she had "orthotics made in 2004." [*Id.*] 614. After a complete examination, Dr. Mark Pietz diagnosed plaintiff with osteoarthritis of the feet with sinus tarsi syndrome. [*Id.*] 615. Dr. Pietz also noted that plaintiff's current orthotics were too narrow for her feet and that the "shell of orthotics collapsed." [*Id.*]. Dr. Pietz counseled plaintiff on conservative treatment versus surgical intervention for her condition, and he only recommended new custom orthotics. [*Id.*] 616. Notably, Dr. Pietz did not identify any specific limitations in plaintiff's abilities based on the osteoarthritis of the feet with sinus tarsi syndrome. [*Id.*] 614-16. Furthermore, the ALJ found that plaintiff's foot condition was a severe impairment, [*id.*] 17-18, and nothing in Dr. Pietz's report suggests that further limitations beyond light work were necessary. "[T]he ALJ, not any particular medical expert, is responsible for assessing [a claimant's] residual functional capacity," 20 C.F.R. § 404.1546(c), "and the ALJ need not adopt any one doctor's opinion." *Christopher H. v. O'Malley*, No. 21 C 4089, 2024 WL 488204, at *4 (N.D. Ill. Jan. 30, 2024) (quoting *Fanta v. Saul*, 848 F. App'x 655, 658 (7th Cir. 2021)). The Court finds that it was not an abuse of the ALJ's discretion to evaluate plaintiff's relatively simple foot condition without input from a medical expert.

4

## II. The ALJ Reasonably Assessed Plaintiff's Ability to Stand and/or Walk

Plaintiff next argues that the ALJ's RFC determination was not supported by substantial evidence because the ALJ did not adequately assess plaintiff's ability to stand and/or walk [14] 12-14. In support, plaintiff notes that Dr. Shah, her family medicine doctor, opined that "[p]laintiff could stand and/or walk less than two hours of eight," [*id.*] 12, and that Dr. Osei, a state agency evaluator at the initial level, opined that plaintiff would have "moderate limitation" when walking and standing. [*Id.*] 13. Plaintiff also notes that she testified at the hearing that "her foot pain is a ten and she can barely stand up," "[h]er feet started hurting in 2016 or 2017 and got worse after she applied for disability. She has arthritis and flat feet which prevent her from walking through the house or standing to shower. Orthotics did not help enough. She can be on her feet long enough to take out the garbage or pick up the mail. In an eight-hour period, she can be on her feet between half an hour and an hour." [*Id.*] 13-14 (internal citations omitted).

### A. Opinion Evidence

"An ALJ has an obligation to evaluate every medical opinion and explain the weight given to the opinion." *Georgios A. v. Kijakazi*, No. 20-cv-2729, 2022 WL 1004249, at *5 (N.D. Ill. Apr. 4, 2022) (internal quotation marks omitted). The ALJ "will not defer or give any specific weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from a [claimant's] medical sources." 20 C.F.R. § 404.1520c(a). Instead, the ALJ need only explain "how persuasive [she] find[s] all of the medical opinions and all of the prior administrative medical findings in [a claimant's] case record." 20 C.F.R. § 404.1520c(b). In deciding how persuasive a given opinion or finding is, the ALJ considers "supportability, consistency, relationship with the claimant, specialization, and other factors that tend to support or contradict" the opinion or finding. *Victor F. v. Kijakazi*, No. 22 C 1451, 2023 WL 2429357, at *3 (N.D. Ill. Mar. 9, 2023). "Supportability and consistency are the two most important factors." *Id.* Supportability means "how well the objective medical evidence and supporting explanations presented by a medical source support the opinion," and consistency means "how consistent the opinion is with other record evidence." *Amaris R. v. Saul*, No. 20 C 1695, 2022 WL 972324, at *2 (N.D. Ill. Mar. 31, 2022).

"An ALJ's decision must explain how she considered the factors of supportability and consistency, but she is not required to explain how she evaluated the other factors." *Victor F.*, 2023 WL 2429357, at *3. "While a detailed analysis is not required, the ALJ must consider the regulatory factors and explain why a medical opinion is not supported or is not consistent with the record to give a reviewing court the bridge to connect the outcome to the record." *Id.* (internal quotation marks and brackets omitted).

5

1. **Dr. Shah**

On October 20, 2019, Dr. Shah reported that plaintiff "is very limited in her physical ability function, including an inability to work an 8-hour day." [13-1] 26. The ALJ noted that Dr. Shah's opinions included "conclusory statements, with little or no explanation, citation, or support in the medical records." [*Id.*]; *see Zuniga v. Berryhill*, No. 2:17-CV-251-HAB, 2019 WL 2754969, at *5 (N.D. Ind. July 2, 2019) ("An expert who supplies nothing but a bottom line supplies nothing of value to the judicial process."). In fact, Dr. Shah's "forms are primarily 'check marks' endorsing statements in a boilerplate form drafted by the claimant's representative law firm." [13-1] 26. As an example, Dr. Shah checked the box for "Stand (as over a bench) and/or Walk" as "Less than 2 hours of an 8 hour day." [*Id.*] 508. The ALJ permissibly observed that Dr. Shah's opinion was "far more severe and limiting" than anything in his own treatment notes. [*Id.*] 26. *See Elaina M. v. Kijakazi*, No. 22 CV 6279, 2023 WL 4707557, at *5-6 (N.D. Ill. July, 24 2023) (ALJ did not err when giving physician's opinion "little value" because his "treatment notes don't paint nearly as dire a picture of the plaintiff as his opinion"); *Johnson v. Colvin*, No. 14 CV 8425, 2016 WL 4479555, at *6 (N.D. Ill. Aug. 25, 2016) (ALJ properly declined to give treating physician's opinion controlling weight because "it is not supported by the physician's own treatment notes"). For all these reasons, there was a substantial evidentiary basis for the ALJ's decision that Dr. Shah's opinions were "not persuasive."

2. **Dr. Osei**

On August 3, 2019, Dr. Osei saw plaintiff for a consultative exam and opined that plaintiff "would be expected to have moderate limitation with respect to walking, . . . [or] standing . . . ." [13-1] 26. Dr. Osei did not explain what he meant by a "moderate limitation" in walking or standing, and the ALJ accordingly found this opinion unpersuasive because "moderate limitation" was "not expressed in vocational terms." [*Id.*]. Furthermore, during his examination, Dr. Osei noted that plaintiff "could walk greater than 50 feet without support; could perform toe/heel/tandem walk, squat; stand on either leg unsupported; and can take shallow hop on either leg." [*Id.*] 22. And, as the ALJ observed, plaintiff "does not demonstrate any gait abnormalities." [*Id.*] 26. These observations, tied to specific deficits in Dr. Osei's opinions, constitute a substantial evidentiary basis for the ALJ's conclusion that his opinion was not supported by his own report and was inconsistent with the longitudinal record. *See Sonji L. v. Kijakazi*, No. 19 C 4109, 2022 WL 672741, at *5 (N.D. Ill. Mar. 7, 2022) ("If the ALJ discounts the physician's opinion after considering these factors, the court must allow that decision to stand so long as the ALJ minimally articulated his reasons–a very deferential standard that the Seventh Circuit has deemed lax.") (internal quotation marks and brackets omitted).

6

### B.     Subjective Symptom Determination

"Social Security Regulation 16-3p outlines a two-step process for an ALJ to follow when evaluating a claimant's subjective symptoms. First, the ALJ must determine whether the claimant has a medically determinable impairment that could reasonably be expected to produce his or her symptoms. Next, the ALJ must evaluate the intensity, persistence, and functionally limiting effects of the individual's symptoms to determine the extent to which the symptoms affect the individual's ability to do basic work activities." *Maria S. v. Kijakazi*, No. 20 C 6727, 2023 WL 7130376, at *7 (N.D. Ill. Oct. 30, 2023) (internal quotation marks and citations omitted).

"When assessing a claimant's subjective symptom allegations, an ALJ must consider several factors, including the objective medical evidence, the claimant's daily activities, his level of pain or symptoms, aggravating factors, medication, course of treatment, and functional limitations." *Charles B. v. Saul*, No. 19 C 1980, 2020 WL 6134986, at *6 (N.D. Ill. Oct. 19, 2020). "[T]he ALJ must explain her subjective symptom evaluation in such a way that allows the Court to determine whether she reached her decision in a rational manner, logically based on her specific findings and the evidence in the record." *Id.* (internal quotation marks and brackets omitted). "The Court will overturn an ALJ's evaluation of a claimant's subjective symptom allegations only if it is patently wrong." *Id.* (internal quotation marks omitted). "[F]laws in the ALJ's reasoning are not enough to undermine the ALJ's decision that [a claimant] was exaggerating her symptoms. Not all of the ALJ's reasons must be valid as long as *enough* of them are." *Halsell v. Astrue*, 357 F. App'x 717, 722 (7th Cir. 2009) (emphasis in original). The Seventh Circuit has stated that it "would not reverse the credibility determination as long as the ALJ provided at least one reason to support the finding." *Schrank v. Saul*, 843 F. App'x 786, 789 (7th Cir. 2021).

Here, the ALJ took the factors required by SSR 16-3p into consideration and noted several specific reasons in support of her determination that plaintiff's subjective symptoms were given less weight. Turning to the objective evidence, the ALJ reviewed and discussed plaintiff's medical history and course of treatment before she concluded that "the medical record does not document the same severity that the claimant alleges in her testimony." [13-1] 21-25. Based on a detailed review of the medical record, the ALJ concluded that plaintiff's subjective complaints are "inconsistent with a finding of disability." [*Id.*].

In her analysis, the ALJ noted "that there [we]re relatively few medical records that cover the period from the alleged onset date to the present." [*Id.*] 24. One such record indicated that plaintiff was "treated by a psychiatrist" but "did not complain about . . . issues walking until October 2019." [*Id.*]. The ALJ also noted that during the hearing, plaintiff testified that "she had not been treated lately due to the COVID 19 pandemic." [*Id.*]. However, the gap in plaintiff's "foot treatment from October 2019

7

to March 2020 does not correspond to the COVID 19 pandemic." [*Id.*]. Rather, plaintiff "began treatment for her feet during the COVID 19 pandemic." [*Id.*]. Even after plaintiff "appeared to her provider in October 2019 for disability forms," "the record indicates claimant was exercising 2-3 times a week." [*Id.*]. Additionally, the ALJ found that if plaintiff's "physical conditions were as severe as she claims, it would be reasonable to expect to see more abnormal exams [], providers . . . noting complaints by the claimant to this effect . . . or treatment beyond orthotics for her foot arthritis." [*Id.*]. Finally, the ALJ noted that "there [we]re also inconsistencies in what the claimant has reported to different sources at different times." [*Id.*] 25. In May 2019, plaintiff "reported that she spends her days doing daily chores," yet during the hearing, plaintiff testified "that she usually spends 20 hours each day laying down and watching television." [*Id.*].

In the Court's view, the ALJ reasonably found plaintiff's subjective allegation – that she could only be on her feet between half an hour and an hour – inconsistent with the objective medical records. Considering the standard of review, plaintiff's arguments are not sufficient to overturn the ALJ's assessment of plaintiff's subjective symptoms. The ALJ properly considered the medical record and conservative treatment in reaching her conclusion that plaintiff's symptoms were not as severe as she claimed because she was able to engage in activities of daily living. Unlike this Court, the ALJ was "in the best position to see and hear the witness and determine credibility." *Crawford v. Astrue*, 633 F. Supp. 2d 618, 631 (N.D. Ill. 2009) (citing *Shramek v. Apfel*, 226 F.3d 809, 811 (7th Cir. 2000)). The Court finds that the ALJ's subjective symptom determination had a substantial evidentiary basis and was not patently erroneous.

\* \* \*

For these reasons, the Court rejects plaintiff's argument that the ALJ did not adequately discuss plaintiff's ability to stand and/or walk. To the extent that plaintiff further argues that the ALJ did not address her ability to stand and/or walk with the requisite specificity, *see* [14] 14, that argument fails. The Seventh Circuit has "emphasized that social-security adjudicators are subject to only the most minimal of articulation requirements. An ALJ need not address every piece or category of evidence identified by a claimant, fully summarize the record, or cite support for every proposition or chain of reasoning." *Warnell*, 97 F.4th at 1053. As the foregoing discussion demonstrates, the ALJ relied on substantial evidence to conclude that the opinion evidence and plaintiff's subjective reports did not support her claim that her ability to stand and/or walk was so compromised as to be disabled. Moreover, plaintiff's claim that the ALJ provided only a cursory discussion of her ability to stand and/or walk is contradicted by the ALJ's decision itself, which repeatedly addressed plaintiff's ability to stand and/or walk. *See, e.g.*, [13-1] 18 (noting that plaintiff walked to alleviate pain from headaches); [*id.*] 22 (noting plaintiff's complaints that orthotics helped plaintiff walk for longer periods of time before needing to sit); [*id.*] 22-24

8

(discussing physicians' findings about plaintiff's ability to walk with normal gait); [*id.*] (noting that plaintiff exercises two or three times per week). The Court finds that the ALJ provided a more than adequate explanation of plaintiff's ability to stand and/or walk.

### III. Dr. Katz's Opinion

Finally, plaintiff argues that the ALJ failed to discuss Dr. Katz's opinion. [14] 15. On June 9, 2018, Dr. Katz prepared a treatment note stating "[p]laintiff should not be weight-bearing." [13-1] 463. Dr. Katz rendered this opinion immediately after plaintiff's leg injury that same month, when a leg injury caused a torn meniscus and a fracture. [*Id.*] 461-64. While the ALJ did not expressly weigh Dr. Katz's opinion, the Court finds that this error was harmless. "In assessing whether an error is harmless, we examine the record to determine whether we can 'predict with great confidence what the result of remand will be.'" *Butler v. Kijakazi*, 4 F.4th 498, 504 (7th Cir. 2021) (citing *McKinzey v. Astrue*, 641 F.3d 884, 892 (7th Cir. 2011).

Most importantly, this opinion was directly related to plaintiff's June 2018 leg injury, and that injury predated plaintiff's alleged onset date by more than ten months. Furthermore, despite suffering this injury, plaintiff's treaters allowed her to resume protected weight-bearing activities (and while using a knee brace and crutches or a cane). Finally, plaintiff continued to work for ten months after the injury and she did not claim any problems with walking in her May 2019 adult function report. [13-1] 295. In these circumstances, the Court finds that Dr. Katz's opinion was essentially a snapshot of plaintiff's condition at a specific time following a specific injury that had little, if any, relevance to whether plaintiff was disabled on or after the alleged onset date. Accordingly, the Court can predict with great confidence that the outcome of the case would not change if a remand were ordered on this issue. Thus, the ALJ's error was harmless. *See Butler,* 4 F.4th at 504.

### Conclusion

For the reasons set forth above, plaintiff's request to reverse and remand the SSA's decision [14] is denied, defendant's motion for summary judgment [19] is granted, and the SSA's decision denying plaintiff's application is affirmed.

_____
**HEATHER K. McSHAIN**
**United States Magistrate Judge**

**DATE: August 5, 2024**